

FILED
Dec 31 2015, 10:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEES

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General of Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kyle W. Dilts, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 31, 2015 <br><br> Court of Appeals Case No. <br> 15A01-1412-CR-545 <br><br> Appeal from the Dearborn Superior Court <br><br> Trial Court Cause No. <br> 15D01-1310-FA-22 <br><br> The Honorable Jonathan N. Cleary, Judge |

**Pyle, Judge.**

## Statement of the Case

[1] This case is a reminder that failure to make a contemporaneous objection *at the time* evidence is introduced at trial will result in waiver of the issue on appeal. Indeed, an appellate claim will not be preserved upon an objection discussed or not made immediately prior to or following the admission of evidence.

Kyle Dilts ("Dilts") was charged with and convicted of the following two counts of Class A felony child molesting:[1] Count I for engaging in sexual intercourse with his daughter and Count II for engaging in deviate sexual conduct with that same daughter. During sentencing, the trial court vacated Dilts's conviction for Class A felony child molesting in Count II, apparently basing its decision on either double jeopardy grounds or the continuing crime doctrine, and imposed a thirty-six (36) year sentence for Dilts's Class A felony child molesting under Count I.

On appeal, Dilts challenges two of the trial court's evidentiary rulings made during his jury trial. Specifically, he contends the trial court abused its discretion by admitting: (1) testimony regarding Dilts's suicidal ideation following his daughter's accusations against him; and (2) his daughter's videotaped interview with a child abuse forensic interviewer. The State cross-appeals and argues that the trial court erred by vacating Dilts's Class A felony child molesting conviction in Count II because the conviction neither violated the prohibition against double jeopardy nor the continuing crime doctrine.

Concluding that Dilts waived review of his evidentiary challenges by failing to make a contemporaneous object at the time the challenged evidence was introduced at trial, we affirm Dilts's conviction for Class A felony child

---

[1] IND. CODE § 35-42-4-3(a)(1). We note that, effective July 1, 2014, a new version of this child molesting statute was enacted and that Class A felony child molesting is now a Level 1 felony. Because Dilts committed his crimes before the effective date, we will refer to the statute in effect at that time.

molesting as contained in Count I. In regard to the State's cross-appeal issue, we agree that that trial court erred by vacating Dilts's Class A felony child molesting conviction from Count II. Therefore, we reverse the trial court's order vacating this conviction and remand with instructions for the trial court to enter judgment of conviction for this conviction under Count II and to hold a new sentencing hearing to sentence Dilts for this Count II conviction.

We affirm in part, reverse in part, and remand.

## Issues

> 1. Appeal Issue – Whether the trial court abused its discretion by admitting testimony regarding Dilts's suicidal ideation and by admitting the victim's videotaped interview with a child abuse forensic interviewer.
>
> 2. Cross-Appeal Issue – Whether the trial court erred by vacating Dilts's Class A felony child molesting conviction in Count II based on double jeopardy grounds or the continuing crime doctrine.

## Facts

In 2011, Dilts was separated from his wife, Samantha Dilts ("Samantha"), with whom he had a daughter, K.D., born in March 2001. At that time, K.D. and Samantha lived in Kentucky with K.D.'s siblings and half-siblings, and Dilts lived in Aurora, Indiana with his girlfriend, Christie Rutledge ("Rutledge"), and her children.

During the time when Dilts lived in his house in Indiana, he inappropriately touched K.D. on multiple occasions when she visited him. The first time, which was sometime in 2011, K.D. was in the bathroom when Dilts went into

the bathroom and "started fingering [her]" or touching her in her "vaginal area" with his fingers "moving in a circular motion." (Tr. 503, 504). Dilts, who was wearing no pants and had been masturbating, then picked up K.D., put her on his lap with her facing out, and "proceeded in fingering [her] again." (Tr. 505). Dilts then "[p]artial[ly] inserted his penis into K.D.'s vagina. (Tr. 506).

[8]     Subsequently, a few weeks later, Dilts again touched K.D. in the bathroom at his house in Indiana. Dilts "stuck his hands down [K.D.'s] pants[,]" "took all of [her] clothes off[,]" picked her up, placed her on his lap as he sat on the toilet, and "inserted his penis" into K.D. (Tr. 509, 510). At this time, K.D. saw and felt that Dilts had a "bump" on his penis. (Tr. 510).

[9]     On a third occasion at Dilts's house, he went into K.D.'s bedroom, where she was getting dressed, "pull[ed] [her] pants down about halfway" and then "fingered" and "licked" her "vaginal area." (Tr. 511). After each molestation, Dilts warned K.D. not to tell anyone about what he had done.

[10]    In August 2013, K.D. confided in her friend, T.A., that Dilts had molested her. K.D. was "shaky" and "crying." (Tr. 388). K.D. told T.A. not to tell anyone. Around that same time, T.A.'s mother, Melanie Bowman ("Bowman"), noticed a change in K.D.'s demeanor from being a "bubbly kid" to "act[ing] strange" and not wanting to go around Bowman's husband. (Tr. 400). T.A. eventually told her mother, who then informed K.D.'s mother, Samantha, about what Dilts had done. Thereafter, K.D.'s allegations were reported to the Indiana

Department of Child Services ("DCS") and the Dearborn County Sheriff's Department.

[11] On August 29, 2013, K.D. spoke to Stephanie Back ("Back"), a forensic interviewer with the Child Advocacy Center ("CAC"). Detective John Vance ("Detective Vance") of the Dearborn County Sheriff's Department's Special Crimes Unit and Teresa Patrick ("Patrick"), a family case manager with DCS, were present for the CAC interview and listened from a separate room. During the interview, then twelve-year-old K.D. disclosed to Back that Dilts started to sexually abuse her when she was nine years old. K.D. stated that, when she was at Dilts's house in Indiana, he had touched her vagina with his fingers, mouth, and penis. Additionally, K.D. alleged that Dilts had molested her when they lived in Kentucky and had also molested K.D.'s sister. After K.D.'s interview at the CAC, she went to Cincinnati Children's Hospital for a physical examination. Dr. Berkeley Bennett ("Dr. Bennett"), who examined K.D., discovered that K.D.'s hymen had a "transection" or a "significant tear" that was consistent with sexual abuse. (Tr. 718).

[12] The following day, on August 30, 2013, Detective Garland Bridges ("Detective Bridges") went to Dilts's house and took a recorded statement from him. During that interview, Dilts confirmed that he had a bump on his penis.

[13] Sometime after K.D.'s allegations against Dilts, DCS filed a petition alleging that K.D. was a child in need of services ("CHINS"). Dilts was subpoenaed to appear at a CHINS hearing scheduled for September 11, 2013, but he did not

appear. At that time, Dilts voluntarily admitted himself to a community mental health facility after he had apparently expressed some suicidal ideation.

[14] Shortly thereafter, on October 2, 2013, the State charged Dilts with Count I, Class A felony child molesting (based on sexual intercourse); and Count II, Class A felony child molesting (based on deviate sexual conduct). These acts were alleged to have occurred between January 2011 and August 2013.[2]

[15] Prior to trial, the State requested a pretrial hearing to determine the admissibility of child hearsay pursuant to INDIANA CODE § 35-37-4-6, the Protected Person Statute ("PPS"). Specifically, the State asked the trial court to determine the admissibility of K.D.'s statements contained in her videotaped forensic interview at the CAC. On September 4, 2014, the trial court held a pretrial hearing to determine the admissibility of child hearsay pursuant to the PPS. During this hearing, K.D. testified about four instances when Dilts had molested her at his house in Indiana. At the end of the hearing, the State argued that the CAC video should be admissible at trial under the PPS because it had met its burden under INDIANA CODE § 35-37-4-6(e)(1) by showing that the videotape provided sufficient indications of reliability and its burden under section (e)(2) because K.D. would be testifying at trial. Dilts objected to the CAC video being admitted at trial, arguing only that the CAC video was "unreliable" because K.D.'s testimony during the hearing did not "match up"

---

[2] These dates were contained in the amended information, which was filed on September 4, 2014.

with her statements made in the CAC interview. (Tr. 98). Dilts's counsel stated that "unavailability or availability [we]re not issues." (Tr. 97).

[16] Following the hearing, the trial court issued an order, in which it found, in part, that K.D.'s statements during the CAC interview were "generally consistent" with her testimony at the child hearsay hearing and that she had also "provided additional details of other incidents" involving Dilts. (App. 83). The trial court determined that "the August 29, 2013 videotaped [CAC] statement of K.D. [would be] admissible at the jury trial, so long as the other requirements of Indiana Code [§] 35-37-4-6 [we]re met, including K.D. testifying at trial, as required by the Indiana [C]ode absent psychiatrist, physician, or psychologist testimony concerning unavailability." (App. 83-84).

[17] The trial court held a four-day jury trial on September 15-18, 2014. During voir dire, Dilts's two attorneys stated that they both had brothers who had committed suicide. One of the attorneys asked the jury venire "if evidence were presented that a suspect, a defendant, was depressed and contemplating suicide, that would not be evidence of guilt in your mind, would it?" (Tr. 268). Shortly thereafter, Dilts's other attorney stated that the jury would hear that Dilts, "after learning about these accusations . . . attempted suicide." (Tr. 285-86). His counsel then asked, "If you heard that someone attempted suicide, how would that make you feel?" (Tr. 286).

[18] Dilts's defense at trial was that he was innocent and that K.D. was making up the allegations against him. During opening arguments, Dilts's counsel stated

that K.D. had a videotaped interview at the CAC where "she made these allegations that led to these charges." (Tr. 362). His counsel then stated:

> And I agree with [the prosecutor], I want you guys to hear it. I want to characterize the statements that she made, because, again, it's not good enough that I believe that [Dilts is] innocent. You guys get to make that decision. And after you -- after you listen to what [K.D.] has to say, just on the face of her statement, just from the statement itself and the twists and turns that it makes and the outlandish accusations that are contained in her statement and in the statement that she'll give live and in court, just from the statement itself you'll see that she is not telling the truth.

(Tr. 362-63).

[19] On the morning of the second day of the jury trial, before the trial continued, Dilts's counsel deposed K.D. During that day of trial, Detective Vance and Patrick, the DCS family case manager, both testified that Dilts had failed to appear at the CHINS hearing on September 11, 2013. Prior to Detective Vance's testimony on this subject, Dilts objected and argued that any testimony regarding a CHINS proceeding was prejudicial and should be excluded under Evidence Rule 404(b). The State responded that it was not going to present any testimony regarding the findings of the CHINS proceeding and that, instead, the testimony would be limited to the fact that Dilts failed to appear at the CHINS hearing as subpoenaed. The State added that an upcoming witness would testify that Dilts had not appeared for the CHINS hearing because "he had attempted to commit suicide or was thinking of committing suicide." (Tr. 432). The State argued that Dilts's failure to appear for the CHINS hearing was

"relevant evidence of guilt[.]" (Tr. 432-33). The State asserted that this testimony was "evidence of his guilt, just like flight [i]s evidence of someone's guilt . . . suicide is flight, and not appearing at a CHINS proceeding is flight." (Tr. 433). The State acknowledged that "there [we]re other explanations as to why someone would commit suicide, but that [went] to the weight, not the admissibility" of the evidence. (Tr. 433). Dilts's counsel responded that any evidence of attempted suicide was not evidence of guilt and that it was "improper to use a bad act [or] another act by this defendant that is not related to the acts for which he's charged to then somehow prove that he did this other thing." (Tr. 437). After the State told the trial court that Detective Vance would not testify about the suicide issue, the trial court overruled Dilts's objection and allowed the State to present testimony from Detective Vance and Patrick that Dilts had failed to appear for the CHINS hearing.

[20] That same day, K.D. testified regarding the three incidents of molestation as set forth above. During cross-examination, Dilts's counsel tried to impeach her with: (1) the statements that she had made during the CAC interview; (2) her testimony from the child hearsay hearing; and (3) her deposition testimony taken the morning of trial. Specifically, Dilts's counsel attempted to use portions of these prior statements to question K.D. about whether she was facing toward or away from Dilts when he molested her and whether or not Dilts was wearing a condom at that time. When Dilts's counsel tried to impeach K.D. with one of her specific statements from the CAC interview, the State objected and argued that, under Evidence Rule 106, K.D.'s entire

statement should be introduced into evidence. At that point, the parties agreed that the CAC interview would be later introduced and played for the jury but with a redaction of the portions of the interview that contained allegations that Dilts had molested K.D. in Kentucky and had molested K.D.'s sibling. Thereafter, the parties finished their examinations of K.D., and the State presented other witnesses, including Dilts's estranged wife, Samantha, who corroborated K.D.'s testimony that Dilts had a bump on his penis.

[21] At the end of this second day of trial, the State informed the trial court about its intention to introduce and play the CAC interview the following day, and it again indicated that the video would need to be redacted. The trial court released the jury for the day and conducted a hearing regarding the videotaped CAC interview. The State told the trial court that it was working with Dilts's attorneys to redact portions of the CAC interview that referenced the unrelated molestation allegations against Dilts. After the prosecutor stated that both parties wanted the CAC interview admitted, Dilts's counsel agreed and stated that the parties would "figure . . . out" the redaction issue. (Tr. 613).

[22] The following day, before resuming the trial, the trial court and the parties again discussed the CAC redaction issue. The parties had agreed that the Kentucky and sibling molestation allegations should be redacted from the 103-page CAC interview transcript and video but disagreed on the inclusion of four pages (pages 91-95) from K.D.'s statement. Dilts argued that some of the statements contained on these pages could lead the jury to believe that there were other allegations of abuse. The trial court acknowledged that some of the

details of K.D.'s CAC interview on the disputed pages were inconsistent with her trial testimony. The trial court, however, found that the disputed pages did not mention the allegations in Kentucky or involve K.D.'s sibling and ruled that these pages would be admitted with the remainder of the CAC interview as redacted by the parties.

[23] Thereafter, still outside of the jury's presence, the State made an offer of proof regarding its intention of presenting testimony regarding Dilts's suicidal ideation. The State argued that it should be allowed to present evidence that Dilts did not show up to the CHINS hearing because he had suicidal thoughts and was hospitalized. Asserting that this was an issue of first impression in Indiana, the State presented supporting case law from other jurisdictions[3] and argued that the trial court should engage in a Rule 403 balancing test to determine whether the evidence was admissible. The State argued that the evidence was probative because evidence of a suicide attempt was equivalent to evidence of flight, both of which were evidence of the consciousness of guilt. The State contended that the evidence was not prejudicial because Dilts could argue against the weight of the evidence by arguing that there were other reasons why a person would attempt suicide. The State pointed out that Dilts's two attorneys had already done so during voir dire when they discussed reasons other than guilt associated with suicide. Dilts, on the other hand, argued that

---

[3] The State submitted *State v. Orozco*, 708 S.E.2d 227 (S.C. Ct. App. 2011), *reh'g denied*, *cert. granted*, and *Aldridge v. State*, 494 S.E.2d 368 (Ga. Ct. App. 1997). The State also submitted an Indiana case in support of the proposition that flight could be considered by a jury as evidence of guilt.

the State's proposed evidence would be prejudicial because Dilts had not attempted to commit suicide and because his hospitalization had occurred before he was charged with the crimes at issue. Dilts also argued that evidence of suicide should be excluded because it was a prior bad act that was impermissible to prove the offenses. The trial court ruled that it would allow the State to present "evidence of the attempted suicide." (Tr. 660-61). When ruling on the admissibility of the evidence, the trial court reasoned that Indiana allows evidence of conduct showing consciousness of guilt and that Dilts's attorneys were aware of the evidence because they raised it during voir dire.[4] The trial court also stated that it had relied upon the South Carolina case submitted by the State and the State's offer of proof that Dilts's was aware of allegations against him at the time.

[24] When the trial court resumed the jury trial, the State called Dilts's sister-in-law, Danielle Dilts ("Danielle"), to the stand. Danielle testified that, in September 2013, she was in the courthouse parking lot, when she saw Dilts's girlfriend, Rutledge, talking to Dilts on the phone. Danielle testified that she talked on the phone to Dilts—who was "upset[,]" crying, and "devastated"—while Rutledge tried to phone someone "to get help to get to where [Dilts] was located." (Tr. 665). Danielle testified that she "was in fear that [Dilts] was in a bad way," and she feared that he would attempt suicide "because of everything leading up to

---

[4] The trial court stated that it was not basing its ruling upon a finding that Dilts had opened the door to such evidence.

that." (Tr. 667). Danielle also testified that Dilts was then taken by police escort and voluntarily admitted to a community mental health center. Dilts did not object to this relevant portion of Danielle's testimony.[5]

[25] Subsequently, the State called Detective Vance as a witness so that it could introduce and publish the CAC interview, State's Exhibit 6, to the jury. Before the detective took the stand, Dilts's counsel stated that Dilts "ha[d] to make an objection to the video being played at all" based on *Tyler v. State*, 903 N.E.2d 463 (Ind. 2009), which he asserted held that allowing live testimony and a recorded statement was impermissible because the admission of both would result in vouching and bolstering. (Tr. 673). The State questioned the timing of Dilts's bolstering argument and argued that *Tyler* did not apply because the CAC videotaped interview contained inconsistencies from K.D.'s trial testimony. The State also asserted that the CAC video should be admitted because Dilts had opened the door to its admission by bringing out statements from the video during K.D.'s cross-examination. The trial court stated that it "st[ood] by the order out of the child hearsay hearing" and ruled that the CAC video was admissible evidence. (Tr. 675).

[26] The State then called Detective Vance to the stand and moved to admit the video. Dilts did not object, and the trial court admitted the CAC interview into evidence and began to play the video for the jury. At some point during the

---

[5] Dilts raised hearsay objections to other portions of Danielle's testimony.

publication of this exhibit, Dilts's counsel approached the bench to make a motion. The trial court stopped the video and released the jury for a recess. Dilts's counsel stated that he had planned to object to something he thought he heard during the playing of the video, but he informed the trial court that he was withdrawing the objection. The trial court expressed it displeasure with Dilts's interruption, stating that "[a] motion such as that made during a publication of an exhibit that's already been admitted obviously is a material interruption in the trial." (Tr. 679-80).

[27] Then, upon the State's request, the trial court delayed playing the remainder of the CAC video so that the State could present testimony from Dr. Bennett, who had a scheduling issue. Later, after the State's last witness, the parties discussed—outside the presence of the jury—the continuation of playing the CAC video. The prosecutor informed the trial court that the parties had "agreed on a restarting point" for the video and that the remaining duration was approximately seventy minutes. (Tr. 774). When the prosecutor requested that the video not be interrupted, Dilts's attorney "apologize[d]" and stated that he "want[ed] to be safe with this thing[.]" (Tr. 775).

[28] Upon reconvening the jury following a lunch break, the State completed publication of the CAC interview to the jury and then rested. (Tr. 778). Dilts's attorney then stated that he had "grave concerns about the video" and began discussing "references" made in the video. (Tr. 778, 779). The trial court removed the jury from the courtroom and then stated:

The Court notes for the record that the State has rested. We're outside the presence of the jury.

[Dilts's counsel] began to make an objection to the Child Advocacy Center video. The Court does want to make clear for the record that what's been admitted as State's Exhibit 5 is the transcript of the Child Advocacy Center interview. Beginning early this morning in chambers and then throughout the morning, there was a lengthy hearing regarding this issue. The parties -- What's highlighted in State's Exhibit 5, the parties agreed that it would be redacted. The Court has carefully listened to the video and it was redacted and was not shown to the jury.

There was an objection by defense counsel for page 91 through 95, and the Court held a hearing on that, overruled the objection, and allowed pages 91 through 95 to be published to the jury.

So the Court feels that this issue has already been ruled upon, but, [Dilts's counsel], if you wish to make a further objection for the record, you may.

(Tr. 780-81). Dilts's counsel started to list instances in the video to which he objected, but he then acknowledged that he was making "the same objection" as he had previously made. (Tr. 782). The trial court then stated:

Okay. The Court notes the defense has the same continuing objection, which the parties agreed to everything except for 91 through 95 pages. The Court has already ruled upon that, it's been published to the jury, so the Court finds at this point a continuing objection is noted but untimely.

(Tr. 782-83). The State then added that it "want[ed] to point out for the record that . . . the State did not bring up the content of the CAC interview until the defense brought it up during [Dilts's] cross-examination" and that it was "the

State's position [that] he opened the door to the entire CAC interview by raising it on cross-examination." (Tr. 783).

[29] Thereafter, Dilts moved for judgment on the evidence, which the trial court denied. Dilts then requested that the trial court dismiss Count II, arguing that:

> The evidence that's been presented is that these allegations are -- the factual allegations behind the two charging informations are identical and, therefore, having two counts of child molest – the second count is redundant, Your Honor. There's no evidence that one count is alleged to have occurred at a different time than the other. They are identical in nature, they are identical in time, and, therefore, we would ask that Count No. 2 be dismissed.

(Tr. 786-87). The State responded that the two charges involved the two separate acts of sexual intercourse and deviant sexual conduct, and the trial court denied Dilts's motion to dismiss Count II. Dilts then rested.

[30] During the State's rebuttal closing argument, the prosecutor discussed Dilts's failure to appear at the CHINS hearing, stating that he did not appear for the hearing because "he was admitted to [a facility] apparently on some discussion of killing himself." (Tr. 876). The State subsequently argued that "[t]hat's evidence of guilt" and then stated that "[n]ot everyone that kills himself is guilty of something[.]" (Tr. 876). At that point, Dilts's counsel objected, without specifying a ground for the objection, and the trial court overruled the objection. Following closing arguments, the jury found Dilts guilty as charged.

[31] At sentencing, Dilts made no further argument regarding the dismissal of his guilty verdict under Count II. However, when sentencing Dilts, the trial court

discussed his two child molestation convictions. The trial court stated, in relevant part:

> Now, the Court has considered the nature of the criminal offense. The weeklong jury trial, the testimony that the jury heard was that [K.D.], there was insertion of the defendant's penis, that he licked her vaginal area, that there was finger insertion over a period of time when she was nine to 11 years old. That went from January 2011 to August of 2013.
>
> * * * * *
>
> So those were the facts that the jury made the determination that [Dilts] was guilty of Count 1, which was the sexual intercourse, and Count 2, the deviant sexual conduct, which was the -- basically the licking of the vaginal area.
>
> * * * * *
>
> . . . Again, it's [K.D.'s] father. The charged time period, she was between nine and eleven years old. The testimony was that this happened on numerous occasions where there was the oral, digital, and penis penetration.
>
> * * * * *
>
> The Court wants to make perfectly clear, obviously there was a weeklong jury trial where a jury determined that Mr. Dilts did molest his daughter [K.D.] . . .

(Tr. 980-985). After discussing the two separate acts that constituted Dilts's convictions, the trial court vacated Dilts's child molesting conviction under Count II, stating:

> The Court vacates the conviction for Count 2. That was the oral child molestation. The jury found guilty of both. Under the double jeopardy analysis, since it was charged during the same period of time, the incidents occurred rather simultaneously, the Court vacates the conviction for Count 2, does impose sentence

on Count 1, child molesting, being sexual intercourse by an individual 21 years or older with a person under the years of 12 years.

(Tr. 986-87). The trial court then imposed a thirty-six (36) year sentence for Dilts's Class A felony child molesting under Count I and determined that he was a "credit-restricted felon under Indiana law." (Tr. 987). Dilts now appeals his conviction under Count I, and the State cross-appeals the trial court's ruling that vacated Dilts's conviction under Count II.

# Decision

## 1. Appeal Issue – Admission of Evidence

[32] Dilts argues that the trial court abused its discretion by admitting the following evidence at trial: (1) testimony regarding Dilts's suicidal ideation; and (2) K.D.'s videotaped CAC interview.

[33] Before we address Dilts's arguments, we note that the admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for an abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Conley v. State*, 972 N.E.2d 864, 871 (Ind. 2012), *reh'g denied*.

## A. Suicidal Ideation

[34] Dilts first argues that the trial court abused its discretion by admitting testimony regarding his suicidal ideation. Dilts sets forth multiple arguments in regard to this issue. First, he acknowledges that other jurisdictions allow evidence of a suicide attempt to show consciousness of guilt, but he contends that the testimony should not have been admitted because he had only suicidal ideation, not a suicide attempt. Dilts also contends that the admission of the testimony should be reviewed under Evidence Rule 404(b). He asserts that "his suicidal thoughts [were] evidence of a wrongful or bad act because the State framed his mental state as [his] avenue to escape imprisonment for the commission of his crime." (Dilts's Br. 11). Next, he argues that the testimony should have been excluded under Evidence Rule 402 because his suicidal ideation was not relevant to the molestation accusations.[6] Finally, Dilts argues that the testimony was prejudicial and that this prejudice outweighed its probative value.[7]

[35] The State argues that the trial court did not abuse its discretion by admitting the testimony regarding Dilts's suicidal ideation because it was relevant to prove consciousness of guilt. The State points out that Dilts was aware of the child molesting allegations against him, which had led to a CHINS proceeding, and

---

[6] In support of this argument, Dilts cites to *Cardine v. State*, 475 N.E.2d 696 (Ind. 1985) and *Kien v. State*, 782 N.E.2d 398 (Ind. Ct. App. 2003), *reh'g denied*, *trans. denied*. Dilts admits that "neither *Kien* nor *Cardine* are dispositive of [his] case" but argues that these cases show that Indiana appellate courts are "reluctan[t] to inject a defendant's suicidal thoughts into evidence in a criminal trial." (Dilts's Br. 13) (emphasis of case names added).

[7] For this final argument, he does not cite to Evidence Rule 403 even though such an argument falls under that rule.

that he had failed to appear for the CHINS hearing because he was suicidal and admitted to a facility. The State argues that "the circumstances and timing of the event shows a sufficient connection between Dilts' actions and the wrongdoing alleged regarding KD to support the trial court's decision to allow the jury to consider whether the evidence proved a consciousness of guilt." (State's Br. 15). Additionally, the State asserts that Dilts failed to show that the evidence should have been excluded under Rule 403 because Dilts did not show that he was unfairly prejudiced by it, especially where his counsel had brought up the matter during voir dire. The State further contends that, even if this evidence of suicide were not admissible, Dilts's counsel's discussion of it during voir dire opened the door to such testimony. Finally, the State asserts that the admission of the testimony would be, at the very least, considered to be harmless error because there was substantial evidence of Dilts's guilt.

[36] The testimony that Dilts challenges on appeal was presented by Dilts's sister-in-law, Danielle, whom the State called as a witness. Danielle testified that, on the day of the September 2013 CHINS hearing, she had spoken to Dilts, who was "upset[,]" crying, and "devastated[.]" (Tr. 665). Danielle further testified she feared that Dilts was going to attempt suicide and that he was admitted to a mental health facility that day.

[37] While the parties have presented specific arguments regarding whether or not there was any error in the admission of this testimony, they both fail to mention that Dilts did not make a contemporaneous objection when the testimony was offered and admitted at trial. Nevertheless, the record reveals that—*before* the

State called Danielle to the witness stand and outside the presence of the jury—the parties argued about whether such testimony should be admitted, and the trial court ruled that it would allow the testimony. Dilts, however, did not object to this specific testimony at the time it was actually presented during trial, let alone offer an objection that mirrors his arguments raised on appeal. Thus, he has waived review of this issue on appeal. *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (holding that a defendant's failure to lodge a contemporaneous objection at the time evidence is introduced at trial results in waiver of the error on appeal), *reh'g denied*. *See also Stephenson v. State*, 29 N.E.3d 111, 118 (Ind. 2015) (explaining that the failure to timely object to the admission of evidence will "procedurally foreclose" the error on appeal); *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000) ("The failure to make a contemporaneous objection to the admission of evidence at trial results in waiver of the error on appeal."); *Tinnin v. State*, 416 N.E.2d 116, 118 (Ind. 1981) (explaining that a defendant "must make his objection to a question before the answer is given in order to preserve the issue for appeal").

[38] Despite the lack of objection, "[a] claim that has been waived by a defendant's failure to raise a contemporaneous objection can be reviewed on appeal if the reviewing court determines that a fundamental error occurred." *Brown*, 929 N.E.2d at 207. "The fundamental error exception is 'extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id.* (quoting *Mathews v. State*, 849 N.E.2d

578, 587 (Ind. 2006)). "The error claimed must either 'make a fair trial impossible' or constitute 'clearly blatant violations of basic and elementary principles of due process.'" *Id.* (quoting *Clark v. State*, 915 N.E.2d 126, 131 (Ind. 2009), *reh'g denied*). Dilts, however, does not offer a fundamental error argument, and we will not provide one for him.[8] *See* Ind. App. R. 46(A)(8)(a). Therefore, Dilts has waived appellate review of this issue, and we will save for another day the issue regarding whether a defendant's suicidal ideation is admissible as evidence of consciousness of guilt.[9]

## B. Videotaped Interview

[39] Next, we address Dilts's argument that the trial court abused its discretion by admitting State's Exhibit 6, the redacted version of K.D.'s videotaped CAC interview. Dilts argues that the trial court should not have allowed the State to

---

[8] We note that, given the record before us—including the evidence presented supporting his convictions (e.g., K.D.'s testimony and the medical evidence showing a significant tear to K.D.'s hymen) and Dilts's attorneys' voir dire references to evidence of his suicidal ideation and alternative reasons for such ideation—we fail to see how the admission of Danielle's testimony regarding Dilts's suicidal ideation made a fair trial impossible or resulted in fundamental error.

[9] We, however, recognize that our Indiana Supreme Court—in *Stephenson v. State*, 29 N.E.3d 111 (Ind. 2015)—recently discussed the admissibility of a defendant's suicide attempt. There, the defendant—two days after the police had questioned him about the crime of murder—attempted suicide and wrote a note in which he disavowed any involvement in the crime. *Stephenson*, 29 N.E.3d at 115. Evidence of the defendant's suicide attempt and suicide note were admitted into evidence at trial, and the defendant objected to the evidence. *Id.* at 119. On appeal, the State argued that the suicide attempt evidence was relevant to the defendant's motive and consciousness of guilt. *Id.* at 119-20. The *Stephenson* Court explained that prior Indiana case law had "not announce[d] a general proscription" against suicide attempt evidence. *Id.* at 119. The Court held that evidence was relevant to the issue of motive but "decline[d] to find that the mere existence of an attempted suicide, without more, is relevant evidence of a person's guilty conscience about committing a charged crime, especially a charged crime which the person expressly disavows when the suicide is attempted." *Id.* at 120.

play the videotaped statement because K.D. had already testified during the trial. He contends that the videotaped statement improperly vouched for K.D.'s testimony. Dilts also asserts that admission of the videotaped CAC interview was in violation of the PPS, INDIANA CODE § 35-37-4-6, and the rule set out in *Tyler v. State*.

[40] As with the previous evidentiary challenge, Dilts fails to demonstrate that he made a timely objection when this challenged evidence was admitted at trial. As revealed in the Facts Section above, the parties extensively discussed this CAC videotaped interview, including the relevant redactions cooperatively made by the parties and Dilts's *Tyler* objection. These discussions, however, were *prior* to the time when the State called its sponsoring witness for this exhibit. When Detective Vance was on the stand and the State offered the CAC videotaped interview as State's Exhibit 6, Dilts did not raise a contemporaneous objection to the admission of the exhibit. While Dilts's counsel raised an objection during the publication of the exhibit and then withdrew it, such action was too late. "The requirement that evidentiary objections be made timely is for the purpose of permitting a trial court to take appropriate preventative or corrective action during trial." *Stephenson*, 29 N.E.3d at 119. Because Dilts did not object to State's Exhibit 6 when it was admitted, he has waived appellate review of this issue. *See Hartman v. State*, 615 N.E.2d 455, 459-60 (Ind. Ct. App. 1993) (explaining that a party must make an objection to an exhibit when it is offered and before it is admitted into evidence

and that an objection made after the evidence is admitted is untimely and unavailable for argument on appeal), *reh'g denied.*

### 2. Cross-Appeal Issue – Vacated Child Molesting Conviction

[41] The State cross-appeals the trial court's determination vacating Dilts's Class A felony child molesting conviction in Count II.

[42] During the sentencing hearing, neither the State nor Dilts made any reference to the dismissal of Dilts's guilty verdict under Count II. However, the trial court, after discussing the two separate acts that constituted Dilts's convictions, vacated Dilts's child molesting conviction under Count II, stating:

> The Court vacates the conviction for Count 2. That was the oral child molestation. The jury found guilty of both. Under the double jeopardy analysis, since it was charged during the same period of time, the incidents occurred rather simultaneously, the Court vacates the conviction for Count 2, does impose sentence on Count 1, child molesting, being sexual intercourse by an individual 21 years or older with a person under the years of 12 years.

(Tr. 986-87).

[43] The State contends that the trial court vacated this conviction based on either double jeopardy principles or the continuing crime doctrine, and the State asserts that such action was improper under either theory. We agree.

[44] First, as we review the State's double jeopardy argument, we note that the Indiana Double Jeopardy Clause provides, in relevant part, that "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. I, § 14.

"Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Consequently, two or more offenses are the "same offense" and violate the state double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.* The Double Jeopardy Clause is violated under the actual evidence test if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* at 53. "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). "Rather, 'reasonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* *See also* *Griffin v. State*, 717 N.E.2d 73, 89 (Ind. 1999) ("To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote."), *cert. denied*.

[45] Here, the parties do not dispute that the statutory elements and actual evidence used to convict Dilts of the two counts of child molesting were distinct. Indeed, in Count I, the State charged Dilts with Class A felony child molesting based on his act of engaging in sexual intercourse with K.D. between January 2011 and

August 2013. In Count II, the State charged Dilts with Class A felony child molesting based on his act of engaging in deviate sexual conduct with K.D. between the same time period. The State presented evidence that Dilts penetrated K.D.'s vagina with his penis, *see* I.C. § 35-31.5-2-302 (defining sexual intercourse), and it presented evidence that Dilts penetrated K.D.'s vagina with his fingers on multiple occasions and licked her vaginal area on one occasion. *See* I.C. § 35-31.5-2-94 (defining deviate sexual conduct).[10] Because Dilts's two offenses did not have the same statutory elements and because there is not a reasonable possibility that the jury used the same evidentiary facts to establish the essential elements of the offenses set out in Count I and Count II, the entry of judgment of conviction on both convictions would not have violated the Indiana Double Jeopardy Clause. Accordingly, we conclude that the trial court erred by vacating Dilts's conviction in Count II based on double jeopardy principles.

[46] Turning to the State's argument regarding the continuing crime doctrine, we note that—during the time period that this appeal was being briefed—our Indiana Supreme Court clarified the application of this doctrine in *Hines v. State*, 30 N.E.3d 1216 (Ind. 2015). Specifically, our supreme court explained:

> The continuous crime doctrine is a rule of statutory construction and common law limited to situations where a defendant has been charged multiple times with the same offense. "The

---

[10] Effective July 1, 2014, after commission of Dilts's crimes, this statute was repealed by P.L. 158-2013, sec. 366.

continuous crime doctrine does not seek to reconcile the double jeopardy implications of two distinct chargeable crimes; rather, it defines those instances where a defendant's conduct amounts only to a single chargeable crime." *Boyd v. State*, 766 N.E.2d 396, 400 (Ind. Ct. App. 2002), *trans. not sought, see Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002) (recognizing "a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson* "). The Legislature, not this Court, defines when a criminal offense is "continuous," e.g. not terminated by a single act or fact but subsisting for a definite period and covering successive, similar occurrences. We have applied the continuous crime doctrine in the context of felony murder and robbery, confinement, and kidnapping; situations where the crime charged, as defined by statute, was "continuous."

[47] *Hines*, 30 N.E.3d at 1219-20 (footnotes omitted). The *Hines* Court held that the continuous crime doctrine "applies only where a defendant has been charged multiple times with the same 'continuous' offense." *Id.* at 1220. The *Hines* Court held that the continuous crime doctrine did not apply to the facts of that case because the defendant, who was convicted of criminal confinement and battery, was not convicted of multiple charges of criminal confinement, nor multiple charges of battery. *Id.* at 1220-1221. The Court also reasoned that battery was not a crime for which all of the elements necessary to impose criminal liability were also elements found in criminal confinement or vice versa. *Id.* at 1221. Thus, the *Hines* Court concluded that criminal confinement and battery were "two distinct chargeable crimes" to which the continuous crime doctrine did not apply. *Id.*

[48] Here, Dilts was charged with two counts of Class A felony child molesting; however, one count was for sexual intercourse and the other was for deviate sexual conduct. Furthermore, the evidence presented showed that Dilts engaged in these distinct acts on different days.

[49] Here, Dilts—recognizing the *Hines* Court's clarification of the continuous crime doctrine—does not specifically repudiate the State's argument that the trial court erred by vacating Dilts's child molesting conviction under Count II pursuant to the continuous crime doctrine. Instead, Dilts argues that: (1) we should review the issue under an abuse of discretion standard; and (2) under that standard, we should hold that the trial court did not abuse its discretion by vacating Dilts's Count II conviction under the doctrine because, at the time the trial court vacated the conviction, there was a split of authority in our Court regarding the doctrine. Specifically, he contends that "[g]iven that there were two ways of looking at Indiana's double jeopardy analysis for continuing crimes when Dilts was sentenced, it cannot be said that the court abused its discretion in choosing to rely on the analysis set forth in *Buchanan* [*v. State*, 913 N.E.2d 712 (Ind. Ct. App. 2009), *trans. denied*]." (Dilts's Reply Br. 8). We disagree.

[50] In *Hines*, our supreme court disagreed with *Buchanan* "[t]o the extent *Buchanan* st[oo]d for the proposition that the continuous crime doctrine may be judicially extended to two distinct criminal offenses[.]" *Hines*, 30 N.E.3d at 1220. Moreover, "'[w]here the issue presented on appeal is a pure question of law, we review the matter de novo.'" *Id.* at 1219 (quoting *State v. Moss–Dwyer*, 686 N.E.2d 109, 110 (Ind. 1997)). Whether convictions violate double jeopardy is a

pure question of law, which we review *de novo. Rexroat v. State*, 966 N.E.2d 165, 168 (Ind. Ct. App. 2012), *trans. denied.* Thus, reviewing the specific facts of this case under that standard, we conclude that Dilts's two child molesting convictions—one for sexual intercourse and one for deviate sexual conduct that occurred on different days—were "two distinct chargeable crimes" to which the continuous crime doctrine did not apply.[11] *See, e.g.*, *Williams v. State,* 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001) (holding that the defendant perpetrated two separate offenses of resisting law enforcement and that the trial court properly entered convictions for both counts where the defendant fled from officers after being commanded to stop and also forcibly resisted those officers when they caught up with him and inflicted bodily injury upon them). Accordingly, the trial court erred by concluding that the continuous crime doctrine precluded the imposition of judgment of conviction on Dilts's Count II Class A felony child molesting conviction.

[51] Based on our determination that the trial court erred by vacating Dilts's conviction under Count II, we remand with instructions for the trial court to enter judgment of conviction for this conviction under Count II and to hold a new sentencing hearing to sentence Dilts for this Count II conviction.

[52] Affirmed in part, reversed in part, and remanded.

---

[11] Indeed, our conclusion would be so whether under the de novo standard or the standard suggested by Dilts.

Crone, J., and Brown, J., concur.