

FILED

Aug 29 2019, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew D. Anglemeyer
Marion County Public Defender
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Damoine Wilcoxson,<br>*Appellant/Cross-Appellee/Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee/Cross-Appellant/Plaintiff* | August 29, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1882<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Mark Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1612-F1-47060 |

**Vaidik, Chief Judge.**

## Case Summary

[1] A jury found Damoine Wilcoxson guilty of two counts of attempted murder and one count of criminal recklessness for shooting up two police stations in Indianapolis. The trial court, however, entered only a single attempted-murder

conviction, along with a criminal-recklessness conviction, finding that the two attempted-murder counts merge. The court then sentenced Wilcoxson to thirty-seven years in prison. Wilcoxson appeals, arguing that the trial court should not have admitted certain evidence at his trial and that therefore his convictions should be reversed. We disagree and affirm his convictions.

[2] The State cross-appeals, contending that the trial court erred by merging the two attempted-murder counts and entering only one conviction. Wilcoxson responds that the State is not authorized to bring such an appeal and that, even if it is, merger of the two counts is proper in this case. We hold that (1) the State is authorized to bring its cross-appeal and (2) the trial court erred by merging the two attempted-murder counts. We therefore remand this matter to the trial court for the entry of a conviction and sentence on the second count.

## Facts and Procedural History

[3] Around 11:00 p.m. on October 4, 2016, a person shot up the Indianapolis Metropolitan Police Department's Northwest District building while Sergeant Laura Weida was inside. Thirty spent shell casings and a handwritten note were found in front of the building. The note included threats against "white" people and references to "Yahuah." Ex. 57A.

[4] Nine days later, at about 11:00 p.m. on October 13, a person shot up IMPD's North District building. At the time, Officers Stephen Jones and Justin Keehn were in a room doing paperwork. The lights were on, and the blinds were open

so that the officers, who were both in uniform, could be seen from outside. One bullet came through a window and passed within inches of Officer Keehn's right ear. Outside the building, sixteen spent shell casings were found in an area from which the shooter would have been able to see Officers Jones and Keehn sitting inside. In addition to the bullet hole in the window, police found two bullet holes in the exterior wall of the building, a bullet hole in a dumpster outside the building, and a bullet hole in a car parked near the building. Also found was a handwritten note that, like the note found outside the Northwest District building, contained threats against "white" people and references to "Yahuah." Ex. 143A.

[5] Testing revealed that the thirty shell casings found outside the Northwest District building and the sixteen shell casings found outside the North District building were all fired from the same gun. Moreover, Wilcoxson's DNA was found on one of the casings recovered from the Northwest District building and one of the casings recovered from the North District building.

[6] On October 31, an IMPD SWAT team went to the apartment where Wilcoxson had been staying to take him into custody on one or more unrelated warrants. As the team announced its arrival and attempted to enter the apartment, Wilcoxson began shooting—allegedly in the direction of the SWAT officers. Eventually, he surrendered. A handgun and shell casings were found inside the apartment, and testing showed that the gun was the same one used during the October 4 and October 13 shootings. Handwritten notes referring to "Yahuah" were also found in the apartment. Exs. 228-232A. Handwriting analysis

showed that all or parts of the notes from the Northwest District, the North District, and the apartment were probably written by Wilcoxson. A Facebook page maintained by Wilcoxson also included references to "Yahuah."

[7] The State charged Wilcoxson in relation to all three incidents under a single cause number. Regarding the October 4 shooting, the State charged Wilcoxson with Level 5 felony criminal recklessness. Regarding the October 13 shooting, the State charged Wilcoxson with two counts of attempted murder—one relating to Officer Keehn and one relating to Officer Jones. And regarding the October 31 SWAT incident, the State charged Wilcoxson with a single count of attempted murder relating to the SWAT officers.

[8] Wilcoxson moved to sever the charges, asking that three separate trials be held for the three incidents. The trial court ruled that the charges arising from the October 4 and October 13 shootings could be tried together but agreed to sever the attempted-murder charge arising from the October 31 SWAT incident.

[9] Shortly after the trial court ordered the severance, the State filed notice that it intended to take the October 4 and October 13 charges to trial first and to present, during that trial, evidence that Wilcoxson shot at police when they went to arrest him on October 31. The State asserted this evidence was admissible under Indiana Evidence Rule 404(b), which provides that evidence of crimes, wrongs, or other acts may be admissible to prove, among other things, "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The State argued that evidence that

Wilcoxson shot at police on October 31 "supports the identification of the defendant as the perpetrator" of the October 4 and October 13 shootings, "as well as his motive, intent, preparation and plan in committing" those shootings. Appellant's App. Vol. II pp. 164-65. Wilcoxson objected, and the trial court ruled that the State could present evidence that Wilcoxson fired a gun when the police arrived to take him into custody but not that he shot **at the officers**.

[10] During trial, the court twice admonished the jury that evidence that Wilcoxson fired a gun during the October 31 incident was relevant to prove Wilcoxson's motive, identity, and consciousness of guilt with respect to the October 4 and October 13 shootings but not to prove that he has any particular character trait. Tr. Vol. III pp. 220, 236. The court later gave the jury a final instruction that largely tracked those two admonishments, adding that the evidence could also be used to determine Wilcoxson's intent. Appellant's App. Vol. III p. 38.

[11] The jury found Wilcoxson guilty on all charges being tried: one count of criminal recklessness for the October 4 shooting and two counts of attempted murder for the October 13 shooting. The trial court entered a conviction on the criminal-recklessness count but entered a conviction on only one of the two attempted-murder counts, finding that those two counts "merge." Tr. Vol. IV p. 212. The court sentenced Wilcoxson to a fully executed term of thirty-five years on the attempted-murder conviction and a consecutive term of five years, with two years executed and three years suspended to probation, on the criminal-recklessness conviction, for a total of thirty-seven years in prison and three years of probation.

Wilcoxson appeals, and the State cross-appeals.[1]

# Discussion and Decision

Wilcoxson contends that the trial court should not have allowed the State to present evidence that he fired a gun when the SWAT team came to arrest him on October 31. In its cross-appeal, the State argues that the trial court erred by merging the two attempted-murder counts and entering only one conviction after the jury found Wilcoxson guilty on both counts.

# I. Wilcoxson's Appeal

Wilcoxson challenges the trial court's admission of evidence that he fired a gun during the SWAT incident on October 31, which the court allowed pursuant to Evidence Rule 404(b). That rule provides that evidence of a crime, wrong, or other act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but it "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evidence Rule 404(b). Evidence Rule 403 provides, in turn, that evidence, even if relevant, should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[1] The State eventually dismissed the severed attempted-murder charge relating to the October 31 SWAT incident but refiled it under a new cause number in April 2019. *See* No. 49G06-1904-F1-015722. That case is set for trial this October.

prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Therefore, when the State seeks to use evidence of a crime, wrong, or other act, the court must (1) determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act and, if so, (2) balance the probative value of the evidence against its prejudicial effect. *Hicks v. State*, 690 N.E.2d 215, 221 (Ind. 1997). We review a trial court's ruling for an abuse of discretion. *Spencer v. State*, 703 N.E.2d 1053, 1057 (Ind. 1999).

[15] The trial court ruled that evidence that Wilcoxson fired a gun during the October 31 incident was relevant to four issues with respect to the October 4 and October 13 shootings: (1) motive, (2) identity, (3) consciousness of guilt, and (4) intent. Wilcoxson challenges all four grounds. We do not reach the issues of identity and intent, as we affirm the trial court's ruling on the issues of motive and consciousness of guilt.

[16] Regarding motive, we agree with the State that Wilcoxson firing a gun when police went to arrest him tends to prove that he harbors significant hostility toward police. That hostility, in turn, strongly suggests a motive for the October 4 and October 13 shootings. *See Hicks*, 690 N.E.2d at 222 (holding that defendant's hostility toward victim was relevant to prove motive for murder).

[17] As for consciousness of guilt, Wilcoxson does not dispute that an attempt to avoid arrest is evidence of a guilty conscience. *See, e.g., Myers v. State*, 27 N.E.3d 1069, 1077 (Ind. 2015). Instead, he notes that at the time of the SWAT

incident, besides his "possible involvement in the police district shootings," he "also had two unrelated warrants out for his arrest." Appellant's Br. p. 22.[2] He contends, "While he may have shot because of his involvement in the district shootings, it is equally possible that he shot to avoid arrest on the other warrants." *Id.* But the fact that Wilcoxson might have had a consciousness of guilt with regard to other conduct does not mean that he did not also have a consciousness of guilt with regard to the October 4 and October 13 shootings.

[18] Concerning the balancing required under Evidence Rule 403, there was no doubt that Wilcoxson would be prejudiced by evidence that he fired a gun when the SWAT team went to arrest him. However, trial courts are given wide latitude in weighing the probative value of evidence against the prejudice caused by its admission, *Bishop v. State*, 40 N.E.3d 935, 952 (Ind. Ct. App. 2015), *trans. denied*, and Wilcoxson has not convinced us that the trial court abused its discretion in this regard. While the State was allowed to present evidence that Wilcoxson fired a gun, the court barred the State from presenting evidence that he shot **at the officers**. Furthermore, twice during trial and once again in final instructions the trial court admonished the jury that the evidence of the October 31 shooting could not be considered to establish that Wilcoxson

---

[2] In August 2016, a warrant for Wilcoxson's arrest was issued in a Marion County domestic-violence case (charges that were dismissed after this case was filed). *See* No. 49G17-1608-F6-30211. Then, on October 31, 2016, the same day as the SWAT incident, a warrant for Wilcoxson's arrest was issued in Boone County in relation to the September 2016 shooting death of an elderly man in Zionsville. *See* No. 06D01-1610-MR-249. Earlier this year, Wilcoxson was convicted of murder in that case and sentenced to sixty-five years, to be served consecutive to his sentence in this case. That case is currently on appeal to this Court. *See* No. 19A-CR-1021.

is a person of poor character more likely to shoot at law enforcement. Such instructions minimize the potential prejudice to the defendant. *See Johnson v. State*, 722 N.E.2d 382, 385 (Ind. Ct. App. 2000).

[19] The trial court did not abuse its discretion by admitting evidence that Wilcoxson fired a gun when the SWAT team went to arrest him.

# II. State's Cross-Appeal

[20] In its cross-appeal, the State asserts that the trial court erred by merging the two attempted-murder counts and entering only one conviction. Initially, we briefly address Wilcoxson's argument that the State's cross-appeal is not authorized by Indiana Code section 35-38-4-2, the statute that sets forth the limited circumstances in which the State is allowed to appeal in criminal cases.[3] In

---

[3] The statute provides:

> Appeals to the supreme court or to the court of appeals, if the court rules so provide, may be taken by the state in the following cases:
>
>> (1) From an order granting a motion to dismiss one (1) or more counts of an indictment or information.
>>
>> (2) From an order or judgment for the defendant, upon the defendant's motion for discharge because of delay of the defendant's trial not caused by the defendant's act, or upon the defendant's plea of former jeopardy, presented and ruled upon prior to trial.
>>
>> (3) From an order granting a motion to correct errors.
>>
>> (4) Upon a question reserved by the state, if the defendant is acquitted.
>>
>> (5) From an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution of one (1) or more counts of an information or indictment.
>>
>> (6) From any interlocutory order if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

*State v. Monticello Developers, Inc.*, a jury found the defendant guilty of criminal recklessness, but the trial court, instead of entering a judgment of conviction against the defendant, entered a judgment on the evidence in favor of the defendant. 527 N.E.2d 1111 (Ind. 1988). The State appealed, and our Supreme Court noted that the State's appeal presented a "legal question" rather than an issue of fact and expressly held that, as such, "the State may seek review and remedy under Ind. Code § 35-38-4-2." *Id.* at 1112. Here, the State's cross-appeal asserts that the trial court erred by merging the two attempted-murder counts. This is most certainly a "legal question," as Wilcoxson himself acknowledges. Appellant's Br. p. 23; Cross-Appellee's Br. p. 10. Accordingly, we conclude that the State's cross-appeal is properly before us.[4]

[21] On the merits, the State's argument is very straightforward: merger of the two attempted-murder counts is improper because the jury found Wilcoxson guilty on both counts based on evidence that he fired multiple shots in the direction of

---

> (A) the appellant will suffer substantial expense, damage, or injury if the order is erroneous and the determination thereof is withheld until after judgment;
>
> (B) the order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case; or
>
> (C) the remedy by appeal after judgment is otherwise inadequate.

Ind. Code § 35-38-4-2.

[4] The State cites several other cases in which our Supreme Court or this Court, without explicitly addressing the appealability issue, entertained the merits of a State cross-appeal challenging a trial court's decision to not enter a conviction on a count on which the defendant was found guilty. *See Kendall v. State*, 849 N.E.2d 1109 (Ind. 2006); *Wright v. State*, 828 N.E.2d 904 (Ind. 2005); *Kelly v. State*, 719 N.E.2d 391 (Ind. 1999), *reh'g denied*; *Dilts v. State*, 49 N.E.3d 617 (Ind. Ct. App. 2015), *trans. denied*.

two different officers. In response, Wilcoxson contends that the trial court's merger decision is sustainable under two double-jeopardy doctrines. First, he cites the continuous-crime doctrine, which prohibits multiple convictions for actions that are "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *Walker v. State*, 932 N.E.2d 733, 735 (Ind. Ct. App. 2010), *reh'g denied*. But we have held that this doctrine is not implicated where, as here, the charges at issue allege different victims. *Frazier v. State*, 988 N.E.2d 1257, 1264 (Ind. Ct. App. 2013).

[22] Wilcoxson also invokes what we recently referred to as the "very same act test"—the rule that prohibits "conviction and punishment for a crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Bradley v. State*, 113 N.E.3d 742, 751 (Ind. Ct. App. 2018), *reh'g denied*, *trans. denied*. The problem with this argument is that it starts from the premise—not supported by any citation to the record—that the two attempted-murder charges and the jury's guilty verdicts on those charges were based on the single shot that went through the window. *See* Cross-Appellee's Br. p. 18 ("Here, Wilcoxon's two attempted murder convictions resulted from the very same act – shooting a bullet through the roll call window."). But Wilcoxson took fifteen other shots **in addition to** the one that went through the window, including two that hit the building and two that hit a dumpster and a car sitting outside the building, and the State specifically pointed to these other shots in arguing to the jury that Wilcoxson intended to kill both officers. *See* Tr. Vol. IV p. 158 ("Intent, the number of shots fired. We talked about that earlier.

The number of casings. This isn't an accident. This isn't a one shot."). Nowhere in his discussion of the merger issue—not once—does Wilcoxson acknowledge the evidence that he fired more than one shot. *See* Cross-Appellee's Br. pp. 10-19. In light of the other shots that Wilcoxson fails to address, we cannot say that the entry of two attempted-murder convictions in this case would violate the "very same act test."

[23] We agree with the State that the trial court should have entered two attempted-murder convictions and sentenced Wilcoxson accordingly. We remand this matter to the trial court for that purpose.

[24] Affirmed in part and reversed in part.

Kirsch, J., and Altice, J., concur.