FILED

Jun 21 2017, 8:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



**ATTORNEY FOR APPELLANT**

Leanna Weissmann
Lawrenceburg, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kyle W. Dilts,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 21, 2017

Court of Appeals Case No.
15A04-1610-CR-2316

Appeal from the Dearborn
Superior Court

The Honorable Jonathan Cleary,
Judge

Trial Court Cause No.
15D01-1310-FA-22

**Pyle, Judge.**

# Statement of the Case

[1]    Kyle W. Dilts ("Dilts") appeals his sentence for Class A felony child molesting.[1] Dilts was convicted of two counts of Class A felony child molesting for acts that occurred over a period of three years.  The trial court sentenced him on one conviction and vacated the other.  The State successfully appealed the trial court's decision to vacate the second conviction, and we remanded to the trial court to sentence Dilts on the second conviction.  The trial court did so, and Dilts now appeals this second sentence.  He argues that the trial court abused its discretion when it sentenced him and that his sentence was inappropriate under Appellate Rule 7(B) in light of the nature of his offense and his character. Because we find that the trial court did not abuse its discretion in sentencing Dilts and that Dilts' sentence was not inappropriate, we affirm his sentence.

[2]    We affirm.

# Issues

1.  Whether the trial court abused its discretion when it sentenced Dilts.

2.  Whether Dilts' sentence was inappropriate in light of the nature of his offense and his character.

---

[1] IND. CODE § 35-42-4-3.  We note that the child molesting statute was amended, effective July 1, 2014, and Dilts' offense would now be considered a Level 1 felony.  However, we will apply the version of the statute that was in effect when Dilts committed his offense.

# Facts

We stated the facts underlying Dilts' convictions in our opinion for his first appeal, as follows:

> In 2011, Dilts was separated from his wife, Samantha Dilts ("Samantha"), with whom he had a daughter, K.D., born in March 2001. At that time, K.D. and Samantha lived in Kentucky with K.D.'s siblings and half-siblings, and Dilts lived in Aurora, Indiana with his girlfriend, Christie Rutledge ("Rutledge"), and her children.
>
> During the time when Dilts lived in his house in Indiana, he inappropriately touched K.D. on multiple occasions when she visited him. The first time, which was sometime in 2011, K.D. was in the bathroom when Dilts went into the bathroom and "started fingering [her]" or touching her in her "vaginal area" with his fingers "moving in a circular motion." ([Trial] Tr. 503, 504).[2] Dilts, who was wearing no pants and had been masturbating, then picked up K.D., put her on his lap with her facing out, and "proceeded in fingering [her] again." ([Trial] Tr. 505). Dilts then "[p]artial[ly] inserted his penis into K.D.'s vagina." ([Trial] Tr. 506).
>
> Subsequently, a few weeks later, Dilts again touched K.D. in the bathroom at his house in Indiana. Dilts "stuck his hands down [K.D.'s] pants[,]" "took all of [her] clothes off[,]" picked her up, placed her on his lap as he sat on the toilet, and "inserted his penis" into K.D. ([Trial] Tr. 509, 510). At this time, K.D. saw and felt that Dilts had a "bump" on his penis. ([Trial] Tr. 510).

---

[2] Because Dilts has two transcripts—the transcript from his original trial and the transcript from his second sentencing hearing—we will refer to his original trial transcript (which includes his original sentencing hearing) as "Trial Tr.," and we will refer to his second sentencing transcript as "Sentencing Tr."

On a third occasion at Dilts's house, he went into K.D.'s bedroom, where she was getting dressed, "pull[ed] [her] pants down about halfway" and then "fingered" and "licked" her "vaginal area." ([Trial] Tr. 511). After each molestation, Dilts warned K.D. not to tell anyone about what he had done.[3]

In August 2013, K.D. confided in her friend, T.A., that Dilts had molested her. K.D. was "shaky" and "crying." ([Trial] Tr. 388). K.D. told T.A. not to tell anyone. Around that same time, T.A.'s mother, Melanie Bowman ("Bowman"), noticed a change in K.D.'s demeanor from being a "bubbly kid" to "act[ing] strange" and not wanting to go around Bowman's husband. ([Trial] Tr. 400). T.A. eventually told her mother, who then informed K.D.'s mother, Samantha, about what Dilts had done. Thereafter, K.D.'s allegations were reported to the Indiana Department of Child Services ("DCS") and the Dearborn County Sheriff's Department.

On August 29, 2013, K.D. spoke to Stephanie Back ("Back"), a forensic interviewer with the Child Advocacy Center ("CAC"). Detective John Vance ("Detective Vance") of the Dearborn County Sheriff's Department's Special Crimes Unit and Teresa Patrick ("Patrick"), a family case manager with DCS, were present for the CAC interview and listened from a separate room. During the interview, then twelve-year-old K.D. disclosed to Back that Dilts [had] started to sexually abuse her when she was nine years old. K.D. stated that, when she was at Dilts's house in Indiana, he had touched her vagina with his fingers, mouth, and penis. Additionally, K.D. alleged that Dilts had molested her when they lived in Kentucky and had also molested K.D.'s sister. After K.D.'s interview at the CAC, she went to Cincinnati Children's Hospital for a physical examination. Dr. Berkeley Bennett ("Dr. Bennett"), who examined K.D., discovered that

---

[3] Dilts told K.D. that she or her mother "would get hurt" if she tried to report his crimes. (Trial Tr. 513).

K.D.'s hymen had a "transection" or a "significant tear" that was consistent with sexual abuse.[4]  ([Trial] Tr. 718).

The following day, on August 30, 2013, Detective Garland Bridges ("Detective Bridges") went to Dilts's house and took a recorded statement from him.  During that interview, Dilts confirmed that he had a bump on his penis.

Sometime after K.D.'s allegations against Dilts, DCS filed a petition alleging that K.D. was a child in need of services ("CHINS").  Dilts was subpoenaed to appear at a CHINS hearing scheduled for September 11, 2013, but he did not appear.  At that time, Dilts voluntarily admitted himself to a community mental health facility after he had apparently expressed some suicidal ideation.

Shortly thereafter, on October 2, 2013, the State charged Dilts with Count [1], Class A felony child molesting (based on sexual intercourse); and Count [2], Class A felony child molesting (based on deviate sexual conduct).  These acts were alleged to have occurred between January 2011 and August 2013.

*Dilts v. State*, 49 N.E.3d 617, 619-21 (Ind. Ct. App. 2015), *trans. denied.*

[4] The trial court held a jury trial from September 15-18, 2014.  At trial, Dilts requested that the trial court dismiss Count 2, arguing that:

> The evidence that's been presented is that these allegations are— the factual allegations behind the two charging informations are identical and, therefore, having two counts of child molest—the second count is redundant, Your Honor.  There's no evidence that one count is alleged to have occurred at a different time than

---

[4] Dr. Bennett noted that this injury was "very unusual and quite significant."  (Trial Tr. 719).

the other. They are identical in nature, they are identical in time,
and, therefore, we would ask that Count No. 2 be dismissed.

*Id.* at 625. The State argued that the two charges involved the separate acts of
sexual intercourse and deviate sexual conduct. *Id.* The trial court denied Dilts'
request, and the jury subsequently found Dilts guilty of both charges. However,
at Dilts' sentencing hearing, the trial court vacated Dilts' conviction for Count
2, concluding that "[u]nder the double jeopardy analysis, since it was charged
during the same period of time, the incidents occurred rather simultaneously."
*Id.* at 626. The trial court then imposed a thirty-six (36) year sentence for Dilts'
remaining Class A felony child molesting conviction. The mitigating factors
the court identified were that Dilts did not have a criminal history and that
incarceration would be a hardship for Dilts' family. The aggravating factors the
court identified were the nature of the offense, the position of trust that Dilts
held with K.D., Dilts' status as K.D.'s father, and the harm to K.D., which the
trial court found was greater than required for the elements of the crime. While
the State had presented evidence at the sentencing hearing that Dilts might also
have molested K.D.'s sister, the trial court specified in its oral sentencing
statement that it was not considering those uncharged allegations in sentencing
Dilts.

[5] Thereafter, Dilts appealed evidence that had been admitted at trial. The State
cross-appealed, challenging the trial court's decision to vacate Dilts' Count 2
Class A felony child molesting conviction. We found that Dilts had waived his
evidentiary arguments by failing to make a timely objection at trial and affirmed

his Count 1 conviction. However, we reversed the trial court's decision on Count 2, determining that the trial court should not have vacated Dilts' Count 2 Class A felony child molesting conviction under either the doctrine of double jeopardy or the continuous crime doctrine. Specifically, we found that the two child molesting convictions were based on distinct statutory elements and actual evidence and had occurred on different days. We remanded for the trial court to enter a judgment of conviction on Count 2 and to hold a sentencing hearing to sentence Dilts for his Count 2 conviction.

[6] On July 25, 2016, almost two years after Dilts' trial, the trial court held a sentencing hearing on Count 2. At the beginning of the hearing, the trial court noted that it had "carefully reviewed the file, and particularly the evidence in the jury trial and the sentencing hearing." (Sentencing Tr. 4). Samantha, K.D.'s mother, and Dilts' brother both testified at the sentencing hearing.

[7] First, Samantha testified that, since the trial and first sentencing hearing, Dilts had been charged with acts of child molesting against a different victim, his step-daughter, in Kentucky. She also testified that Dilts' conduct had continued to severely impact K.D. in the time since the trial. Two years later, K.D. still could not sleep at night and could not trust anyone. In addition, K.D. had had to cope with losing family. She had effectively lost her dad, who had a no-contact order in place against her, and many members of Dilts' family had "cut [her] out of their lives." (Sentencing Tr. 9). K.D. had also been unable to talk to Dilts to get any closure as a result of the no-contact order.

[8] Next, Dilts' brother testified that Dilts had always worked to provide for his family and had not had any criminal history before the instant case. He also testified that Dilts had started to work as a utility trustee for the prison since his incarceration.

[9] At the conclusion of the sentencing hearing, the trial court sentenced Dilts to thirty-six (36) years, all executed, to run consecutively to Dilts' sentence for Count 1. As a basis for its sentence, the trial court stated that it "incorporate[d] all the reasons that were articulated in open court" for its sentence on Count 1. (Sentencing Tr. 35). However, the trial court also said that its sentence was based on "additional facts" mentioned at the sentencing hearing for Count 2. (Sentencing Tr. 35). It found as a mitigating factor that Dilts did not have a criminal history. As an aggravating factor, the trial court noted that the harm, injury, and loss to K.D. were greater than required for the elements of the crime. In relation to this factor, the trial court cited Samantha's testimony that K.D. could not trust anyone anymore and stated that it was significant that Dilts was K.D.'s father. Specifically, the trial court explained:

> So, obviously, the elephant in the room is the title of dad and you know, American society places dad particularly with daughters, in a precious role, and you know the old clichés that quote[] the son's first hero, a daughter's first love, be in life what you want your kids to be when they grow up[.] [T]he reason[] daughters love their dad[s] the most is there is a[t] least one person in this world who would never hurt them. And here we are with sexual intercourse combined with oral sex, combined with digital penetration.

(Sentencing Tr. 37). Dilts now appeals.

# Decision

On appeal, Dilts raises two issues: (1) whether the trial court abused its discretion when it sentenced him; and (2) whether his sentence was inappropriate in light of the nature of his offense and his character. We will address each of these issues in turn.

## 1. Abuse of Discretion

First, Dilts asserts that the trial court abused its discretion when it sentenced him. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id*. We will find an abuse of discretion where the decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Id*. at 490–91.

[12] Dilts argues that the trial court abused its discretion when it sentenced him to thirty-six (36) additional years on his second count of child molesting because the trial court's sentence for Count 2 was based on the same facts the trial court had considered when it sentenced him to thirty-six (36) years for Count 1. He contends that, because the trial court had previously found that those facts warranted only a thirty-six (36) year sentence, it could not later find that they warranted an aggregate seventy-two (72) year sentence.

[13] Preliminarily, we must note that the trial court's sentence was within the statutory range for a class A felony, which is between twenty (20) to fifty (50) years. *See* I.C. § 35-50-2-4. Also, the trial court was authorized to order that Dilts serve his sentences consecutively rather than concurrently, thereby increasing his aggregate sentence to seventy-two (72) years. *See Gilliam v. State*, 901 N.E.2d 72, 74 (Ind. Ct. App. 2009) ("The decision to impose consecutive sentences lies within the discretion of the trial court . . ." and "a single aggravating circumstance may justify the imposition of consecutive sentences."); *See* I.C. § 35-50-1-2 ("The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time."). Dilts acknowledges that his sentence was within the statutory range and that the trial court was authorized to order his sentences to be served consecutively but nevertheless contends that the trial court should not have increased his aggregate sentence based on the same underlying facts that had previously warranted a lesser sentence.

[14] However, our review of the record reveals that the trial court did not consider the same set of facts for both of his sentences. There is no evidence that the trial court considered the facts underlying his Count 2 conviction (his acts of oral sex and digital penetration) when it sentenced him on his Count 1 conviction for his acts of sexual intercourse. During Dilts' first sentencing hearing, the trial court mentioned that the evidence of the oral sex and digital penetration had been introduced at trial, but the court then proceeded to vacate the conviction for Count 2.

[15] Further, additional evidence was introduced at Dilts' second sentencing hearing that was not introduced at his first sentencing hearing, and the trial court noted that its sentence for Count 2 was in part based on the "additional facts" mentioned at the sentencing hearing for Count 2. (Sentencing Tr. 35). Specifically, Samantha testified at the second sentencing hearing and was able to give a much more extensive portrait of the impact Dilts' actions were still having on K.D. two years later. She testified that K.D. had lost a large portion of her family, who had cut her out of their lives, that K.D. still had trouble sleeping, and that K.D. had not been able to recover from the loss of her dad, who had not contacted her to express remorse. Also, while Dilts had not been charged with molesting an additional victim at the time of the first sentencing hearing—and the trial court therefore said at the first hearing that it would not consider that uncharged conduct—Dilts had been charged with molesting a

second victim at the time of the second sentencing hearing.[5]  Therefore, Dilts'

second sentence was based partially on new facts that were not available at his

original sentencing hearing.  Accordingly, we do not find support for Dilts'

argument that the trial court increased his aggregate sentence after considering

the same facts that it had previously held warranted a lesser sentence.  Since

Dilts does not otherwise challenge the trial court's exercise of its discretion, we

conclude that the trial court did not abuse its discretion. [6]

## 2.  Inappropriate Sentence

[16]     Next, Dilts argues that his sentence was inappropriate.  Under Indiana

Appellate Rule 7(B), we may revise a sentence if it is inappropriate in light of

the nature of the offense and the character of the offender.  The defendant has

the burden of persuading us that his sentence is inappropriate.  *Childress v. State*,

---

[5] Dilts argues that the trial court did not consider this new circumstance when sentencing him because the trial court did not designate it as an aggravating or mitigating factor.  However, when Dilts objected to the testimony regarding his pending charges for molesting his stepdaughter, the trial court overruled the objection, noting that the character of the offender was a central issue of the sentencing hearing and stating that it would determine what weight to give the testimony.  Accordingly, the trial court considered the uncharged conduct when it sentenced Dilts, even if it did not find it to be an aggravator.

[6] Dilts implies that his increased sentence was a punishment for his decision to appeal his sentence or was a result of the trial court's vindictiveness.  He also contends that we should be concerned when a sentence increases upon resentencing.  As for Dilts' first argument, his reinstated conviction for Count 2 was a result of the State's cross-appeal, not his appeal, so a sentence on that conviction was not a punishment for his decision to appeal; nor has he demonstrated that the trial court was acting vindictively.  The United States Supreme Court has held that a presumption of vindictiveness only applies where there is a "'reasonable likelihood' . . . that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority.  Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness."  *Alabama v. Smith*, 490 U.S. 794, 799 (1989) (quoting *United States v. Goodwin*, 457 U.S. 368, 373 (1982)) (internal citations omitted).  Dilts has not shown that there was actual vindictiveness or a reasonable likelihood of vindictiveness.  As for Dilts' second argument that we should be concerned when a sentence increases upon resentencing, Dilts' sentences for his individual offenses did not increase.  The trial court merely imposed a sentence on a new conviction.

848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id*. at 1224.

[17] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. The sentencing range for Dilts' offense was between twenty (20) and fifty (50) years, with an advisory sentence of thirty (30) years. I.C. § 35-50-2-4. Accordingly, Dilts was sentenced to a longer term than the advisory sentence but less than the maximum. *See id.*

[18] With regard to the nature of his offense, Dilts again argues that the trial court should not have raised his aggregate sentence to a total of seventy-two (72) years based on the same set of facts that supported a thirty-six (36) year conviction. However, as we stated above, there is no evidence that the trial court considered the facts supporting Count 2 when it sentenced him on Count 1. Moreover, the nature of Dilts' offenses supported his aggregate seventy-two-year executed sentence. The evidence presented at trial and at Dilts' sentencing hearings showed that Dilts molested his daughter over a three-year period,

starting when she was nine years old. The impact on K.D. was physically severe, as the person who examined her indicated that even though she had examined over five hundred suspected abuse victims, K.D.'s injury was "very unusual and quite significant." (Trial Tr. 719). Mentally, the impact was also severe as K.D. had to cope, not only with being molested at a young age, but also with losing her father and part of her father's family. As Samantha testified, K.D. still has trouble sleeping and trusting people as a result of Dilts' actions.

[19] As for his character, Dilts argues that his prior military service, lack of criminal history, good prison behavior, and low risk to reoffend warrant a reduced sentence. We do not agree. First, the trial court specifically stated that it did not believe that Dilts had a low risk to reoffend. Further, the evidence submitted at trial is much more persuasive evidence of Dilts' character than his prior good criminal and civil behavior. The evidence showed that Dilts repeatedly abused a vital position of trust with his young daughter, K.D., and there are allegations that he also abused his position of trust with his step-daughter. In addition, Dilts lied to K.D. and told her that she or her mother "would get hurt" if she tried to report his crimes. (Trial Tr. 513). Dilts openly showed no remorse for his actions and has prevented K.D. from having the contact with him that might provide her with some closure and ability to heal.[7]

---

[7] Dilts argues that the goal of the prison should be to rehabilitate a prisoner "quickly." (Dilts' Br. 25). As a result, he asserts that "for someone who has never attempted the rehabilitation offered in prison, it is unfair to

In light of this evidence of the nature of Dilts' offense and his character, we are not persuaded that his sentence was inappropriate.

Affirmed.

Baker, J., and Mathias, J., concur.

---

assume a lengthy time is needed to mold an offender into a productive, law-abiding citizen." (Dilts' Br. 25). However, Dilts ignores that there are other traditional aims of punishment, including retribution and deterrence, regardless of whether he can be rehabilitated in thirty-six years. *See Tyson v. State*, 51 N.E.3d 88, 94 (Ind. 2016).