**FILED**

Mar 04 2020, 6:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rogerick Demar Denham, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | March 4, 2020 <br><br> Court of Appeals Case No. 19A-CR-2164 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Diane R. Boswell, Judge <br><br> Trial Court Cause No. 45G03-1705-F1-5 |

**Altice, Judge.**

## Case Summary

[1] Rogerick Demar Denham appeals the twenty-nine-year aggregate sentence that was imposed following his conviction for aggravated battery, a Level 3 felony, and the habitual offender enhancement. Denham claims that the sentence was

inappropriate in accordance with Indiana Appellate Rule 7(B) because the trial court failed to properly consider his untreated mental illness, his cooperation with the State in obtaining the conviction of a fellow inmate, and his remorse for committing the offenses, which are factors that Denham claims reflect positively on his character.

[2] We affirm.

## Facts and Procedural History

[3] A.D. and Denham were married and living together. On April 7, 2017, A.D. told Denham that she did not think their marriage was working. In response, Denham began to repeatedly stab A.D. in her back and legs with a pocketknife. At some point, Denham left the room and A.D. called the police. When Denham returned, he noticed that A.D. had moved her cell phone. While Denham was searching for the phone, A.D. tried unsuccessfully to grab the knife away from him. Denham started swinging the knife, sliced A.D.'s hands, and continued to stab A.D. "all over her body." *Appendix Vol. II* at 57.

[4] When the police officers arrived, they saw Denham fleeing the residence. The officers entered the house and heard A.D. crying out in pain and saw that she was covered in an "extreme" amount of blood. *Id.* Although barely able to speak, A.D. told the officers that her husband had tried to kill her. A.D. sustained over twenty-five wounds including cuts to her left hand that required nearly forty stitches and reconstructive surgery.

[5] Denham was subsequently arrested and charged with attempted murder, aggravated battery, domestic battery by means of a deadly weapon, and domestic battery resulting in serious bodily injury. The State also alleged that Denham was an habitual offender. Denham and the State negotiated a plea agreement on July 15, 2019, whereby Denham agreed to plead guilty to aggravated battery as a Level 3 felony and to being an habitual offender. The remaining charges were dismissed, along with three other unrelated charges.

[6] The parties agreed to argue the sentence to the trial court with a cap of fourteen years on the habitual offender count. The trial court accepted the plea agreement, and A.D. provided a victim impact statement at the August 15, 2019 sentencing hearing. A.D. explained that Denham had mocked and ridiculed her during the episode, telling her that she was "going to die" and that there was nothing she could do to stop him. *Transcript Vol. II* at 26. A.D. stated that she had suffered "physically, mentally, financially, [and] emotionally" from the attack and that she was "damaged." *Id.* at 29.

[7] The trial court sentenced Denham to fifteen years of incarceration for aggravated battery and to fourteen years on the habitual offender count, for an aggregate sentence of twenty-nine years. Denham now appeals.

## Discussion and Decision

### I. Standard of Review

[8] In accordance with App. R. 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the [c]ourt finds

that the sentence is inappropriate in light of the nature of the offense and the character of the offender." "The principal role of a Rule 7(B) review 'should be to attempt to leaven the outliers . . . but not to achieve a perceived "correct" result in each case.'" *Dilts v. State,* 80 N.E.3d 182, 188 (Ind. Ct. App. 2017) (quoting *Cardwell v. State,* 895 N.E.2d 1219, 1225 (Ind. 2008)), *trans. denied.*

[9]     We independently examine the nature of Denham's offense and his character under App. R. 7(B) with substantial deference to the trial court's sentence. *Satterfield v, State*, 33 N.E.3d 344, 355 (Ind. 2015). "In conducting our review, we do not look to see whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence is 'inappropriate.'" *Barker v. State,* 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied.* Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Dilts,* 80 N.E.3d at 188-89. Denham bears the burden of persuading us that his aggregate twenty-nine-year sentence is inappropriate in light of the nature of the offense and his character. *Id.* at 188.

[10]    We note that the "advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Connor v. State*, 58 N.E.3d 215, 220 (Ind. Ct. App. 2016). The sentencing range for Level 3 felony aggravated battery is between three and sixteen years, with an advisory sentence of nine years. Ind. Code. § 35-50-2-5(b). The sentencing range for the

habitual offender enhancement is between six and twenty years.  I.C. § 35-50-2-8(i)(1).

## II.  Sentencing Claims

### A.  Nature of the Offense

We initially observe that Denham does not advance an argument that his sentence was inappropriate under the "nature of the offense" prong of App. R. 7(B).  In at least one instance, this court has determined that a defendant on appeal must challenge the appropriateness of a criminal sentence under *both* the character of the offender and the nature of the offense aspects of App. R. 7(B), or the issue may be waived.  Specifically, in *Williams v. State*, 891 N.E.2d 621 (Ind. Ct. App. 2008), the defendant failed to present a cogent argument that his sentence was inappropriate in light of his character.  Although it was determined that the defendant arguably waived his challenge as to the inappropriateness of his sentence, we nonetheless exercised our authority to review the sentence.  *Id.* at 633.  In a more recent case, it was determined that this type of waiver does not apply to App. R. 7(B) sentence review.  In *Connor,* the defendant challenged the appropriateness of his sentence only with regard to his character.  In summarizing sentence review under both prongs of App. R. 7(B), the *Connor* court determined that there is no requirement that an appellant must bear the burden of establishing both prongs of the inquiry under the rule.  More particularly, it was determined:

> [A]lthough the rule does state that we may revise a sentence we
> find to be inappropriate 'in light of the nature of the offense *and*

the character of the offender,' . . . we view that as a statement that we as the reviewing court must *consider* both of those prongs in our assessment, and not as a requirement that the defendant must necessarily *prove* each of those prongs render his sentence inappropriate . . . . In short, 7(B) review is a holistic approach, focusing on the forest . . . rather than the trees. . . .

58 N.E.3d at 218-19 (emphases in original) (internal citations omitted). We adhere to the rationale espoused in *Connor* and review Denham's sentence without finding that his argument only as to the "character of the offender" prong in App. R. 7(B) resulted in waiver.

[12] The evidence in this case establishes that the crime was incredibly violent. Denham stabbed A.D. more than twenty-five times, told her that she was going to die, and mocked her for fearing for her life. When A.D. attempted to grab the pocketknife from Denham's hand, the tendons in her left hand were severed. Denham continued to stab her "all over" while whispering, "I'm going to kill you, b***h." *Transcript Vol. II* at 28. Denham then fled and left A.D. to suffer from the multiple wounds that he had inflicted.

[13] When the police arrived, the officers saw that A.D. was covered in blood. Although barely able to speak, A.D. related to the officers that her husband had tried to kill her. A.D. had to be resuscitated twice due to the severity of her injuries and believed that she lived through the ordeal only "by the grace of God." *Transcript Vol. II* at 29. A.D. required multiple stitches and surgery as a result of her wounds. The nature of this offense calls for nothing less than an aggravated sentence.

## B. Character of the Offender

[14] Denham contends that the sentence was inappropriate in light of his character. Specifically, Denham asserts that his mother's testimony at the sentencing hearing regarding his untreated mental illness, his cooperation with law enforcement, his strides to improve himself, and his remorse, all reflect positively on his character and warranted a lesser sentence.

[15] When considering the character of the offender, one relevant fact is the defendant's criminal history." *Johnson v. State*, 986 N.E.2d 852 (Ind. Ct. App. 2013) (citing *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007)). "The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Rutherford*, 866 N.E.2d at 875.

[16] Denham's criminal history reflects that he is a repeat and violent offender. At the time of sentencing, Denham was thirty-four years old and had already accumulated one juvenile adjudication, three misdemeanor convictions, and four felony convictions. Significantly, Denham had been convicted of Class A felony voluntary manslaughter with a deadly weapon in 2005. As a result of that conviction, Denham was sentenced to the Indiana Department of Correction for twenty years. Following his release from incarceration, he continued to commit violent crimes. In October 2016, Denham was convicted of Level 6 felony domestic battery for battering A.D.

In addition to his prior offenses, Defendant was out on bond in three separate cause numbers when he committed the instant offense. Denham was also serving a probationary sentence from Hendricks County for residential burglary. The evidence also showed that Denham had been a member of a violent gang until he was twenty-five years old. The gravity, nature, and number of prior violent offenses in Denham's criminal history, along with his gang involvement, reflect poorly on his character.

Nonetheless, Denham asserts that he is "working to improve himself" because he had participated in a life skills program while incarcerated. *Appellant's Brief* at 10. Denham's completion of a single program of that nature does not warrant a lesser sentence. Similarly, Denham's willingness to act as a State's witness against a fellow inmate does not begin to excuse the fact that he brutally stabbed his wife more than twenty-five times.

Denham also claims that his sentence must be revised because his "previously untreated mental illness [was not] taken into account when assessing his character." *Id.* Although Denham's mother testified that her son had been diagnosed with bipolar disorder when he was younger, there is nothing in the record other than her testimony to support that claim. Moreover, Denham did not present evidence establishing that his mental illness had a nexus to his commission of this aggravated battery. *See Steinberg v. State*, 941 N.E.2d 515, 524 (Ind. Ct. App. 2011) (stating that for mental illness to be a significant mitigating factor, "there must be a nexus" between the mental illness and the

crimes at issue), *trans. denied*.   Even so, the trial court did find that Denham's mental health was a somewhat mitigating factor before pronouncing sentence.

[20] Finally, Defendant argues that his remorse for his actions reflects positively on his character.  Although Denham expressed some remorse for his actions, he attempted to minimize his culpability by relying on his anxiety and depression, his embarrassment from working at McDonalds, and the fear of losing his relationship with his wife.

[21] In sum, Denham has failed to show that his twenty-nine-year sentence is inappropriate.

[22] Judgment affirmed.

Robb, J. and Bradford, C.J., concur.