## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 18 2020, 11:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Office of the Lake County Public
Defender – Appellate Division
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Tyler G. Banks
Supervising Deputy Attorney
General

Samantha M. Sumcad
Josiah Swinney
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donnelle A. Douglas, *Appellant-Defendant,* | May 18, 2020 |
| v. | Court of Appeals Case No. 19A-CR-2534 |
| | Appeal from the Lake Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Samuel L. Cappas, Judge |
| | Trial Court Cause No. 45G04-1706-F3-28 |

**Mathias, Judge.**

[1]     Following a jury trial, Donnelle A. Douglas was convicted in Lake Superior Court of two counts of Level 3 felony armed robbery. He was sentenced to consecutive terms of sixteen years for each count, for a total of thirty-two years in the Department of Correction. Douglas now appeals, raising for our review the sole issue of whether his sentence is inappropriate in light of his character and the nature of his offense. Concluding his sentence is not inappropriate, we affirm.

## Facts and Procedural History

[2]     On June 17, 2017, around 5:00 a.m., Douglas and two others robbed a 7-Eleven in Griffith, Indiana. Douglas wielded a handgun, pointed it at the store's cashier, and directed she "hurry up and give him the money." Tr. Vol. III, p. 11. He also demanded she hand over three cartons of Newport cigarettes. Douglas fled the store, and the 7-Eleven cashier called 911.

[3]     Shortly after the 7-Eleven robbery, Douglas and the others arrived at a White Castle in Hammond. The employee working the cash register took Douglas's order and looked down to make change from the twenty-dollar bill he gave her. When she looked up, she found a handgun pointed at her; Douglas demanded the money in the cash register. A second White Castle employee saw the robbery in progress, retreated to the restaurant's office, and called 911. A third employee ran out of the back door and hid behind a dumpster; from there, she saw Douglas flee the restaurant and run down an adjacent alley near a Dunkin' Donuts.

[4] Hammond Police Officer Jon Sarlea ("Officer Sarlea") was on patrol nearby when the White Castle robbery report was dispatched over police radios. He heard a description of the offender and saw a man, Douglas, who matched the description, walking in the alley behind the White Castle and Dunkin' Donuts in question. Officer Sarlea exited his vehicle, yelled for Douglas to stop, and observed Douglas take off and discard his jacket. Douglas was arrested. A Hi-Point JCP .40 caliber handgun was found in his jacket on the ground. A "large wad of cash" was found in Douglas's pants pocket, and later, at the jail, $308 in cash was retrieved from Douglas's shoe. Tr. Vol. III, pp. 200, 203. The 7-Eleven cashier and the White Castle cashier both made positive identifications of Douglas as the person who had robbed their stores that morning. Law enforcement officials searched a vehicle parked near the White Castle and discovered cash register trays and three cartons of Newport cigarettes traceable to those stolen from the Griffith 7-Eleven. A search of Douglas's phone revealed a picture of the White Castle's hours of operation.

[5] The State charged Douglas with two counts of Level 6 felony armed robbery that day, June 17. The charges were later amended to Level 3 felonies. Douglas was tried by jury on August 26–29, 2019, and found guilty on both counts. A sentencing hearing took place on September 26, 2019. Hammond Police Detective Steven Guernsey ("Detective Guernsey") testified about his investigation into the 7-Eleven and White Castle robberies. He learned that the Dunkin' Donuts near the White Castle had also been robbed at gunpoint; security footage from the store and Douglas's jail phone calls indicated that

Douglas was also responsible for that robbery, though Douglas was not charged with the Dunkin' Donuts robbery due to witness noncooperation. Detective Guernsey also consulted with Illinois law enforcement agencies, who supplied images of a man resembling Douglas from two recent armed robberies near Skokie. Detective Guernsey testified that Douglas was under investigation by the Chicago Police Department for a string of thirteen robberies in that city.

Based on this testimony and on the information contained in Douglas's pre-sentence investigation report, the trial court identified the following mitigating and aggravating circumstances in its sentencing order:

> Mitigating Circumstances:
>
> 1. The Court finds that the defendant suffered an unfortunate childhood;
>
> 2. The defendant suffers from Bi-polar disorder and depression and was committed to a mental institution approximately nine (9) times;
>
> 3. The defendant did apologize for his actions. However, the Court finds the defendant's apology to be perfunctory and insincere; and,
>
> 4. The defendant's apology is diminished by the fact that the defendant was convicted of two (2) robberies and allegedly participated in seventeen (17) other robberies.

Aggravating Circumstances:

1.  The defendant has a history of criminal activity beginning as a juvenile at age ten (10) including twenty-eight (28) contacts with the criminal justice system resulting in eight (8) juvenile adjudications, two (2) felony convictions and three (3) misdemeanor convictions;

2.  The State admitted photographic exhibits depicting the defendant displaying gang symbols with his hands and posing with various firearms, for which he should not be in possession of [sic]. This is evidence that the defendant is an uncharged felon in possession of a firearm, which adversely reflects on the defendant's character.

3.  The defendant has had many opportunities through the criminal justice system to engage in rehabilitation, which he has failed to do;

4.  The defendant has previously been sentenced to period of incarceration which failed to act as a deterrent to future criminal behavior;

5.  The State presented evidence that the defendant was a participant, as evidenced on video, in seventeen (17) other armed robberies, thirteen (13) in Chicago, one (1) in Skokie, Illinois, a Dunkin Doughnuts [sic] in Hammond, Indiana, one (1) in Oak Brook, Illinois and another in Burbank, Illinois. The un-convicted armed robberies reflect extremely adversely on the defendant's character;

6.  The Court finds that coupled with the two (2) that the defendant was convicted of, the defendant's pattern of participating in the number of robberies is egregious;

7. The Court finds that the defendant lead a drug-addictive lifestyle as evidenced in the presentence investigation report;

8. The Court finds the defendant's IRAS score to be very high;

9. The Court finds that the defendant engaged in prolific crime sprees which negates any remorse that the defendant expressed at sentencing;

10. The Court finds that a mitigated sentence would depreciate the seriousness of this crime;

11. The Court finds that the harm, loss, or injury suffered by the victim is significant and greater than the elements necessary to prove the commission of the offense in that as of this date, one of the victims still suffers from emotional trauma in the form of nightmares, sleepless nights and was off of work for two (2) months because of her apprehension to appear at work;

12. The Court finds that one of the guns depicted in photographs from the defendant's phone has a "silencer" on it, which the Court doubts the defendant was legally able to possess;

13. The Court finds that when the defendant was arrested, drugs were retrieved from his person and the vehicle that he was in;

14. The Court finds that as far as armed robberies are concerned, this is the worst of the worst;

15. The Court finds the defendant to be twenty-seven (27) years of age and his life of crime started at the age of ten (10). On average, the defendant had contact with the criminal justice system every of his life [sic] since the age of ten (10); and,

16. The Court finds that the defendant is in need of correctional or rehabilitative treatment that can only be provided by a penal facility.

The Court finds that the aggravating circumstances substantially outweigh the mitigating circumstances.

Appellant's App. pp. 183–85.

[7] The trial court sentenced Douglas to sixteen years on both counts of Level 3 felony armed robbery and ordered that the terms be served consecutively, for an aggregate sentence of thirty-two years. This appeal followed.

## Discussion and Decision

[8] Douglas contends that the thirty-two-year sentence imposed for his convictions for two counts of Level 3 felony armed robbery is inappropriate in light of his mental illness and his addiction to drugs and alcohol. He argues that his sentence be reduced to ten years and that he be considered for purposeful incarceration. Article 7, Sections 4 and 6, of the Indiana Constitution authorize independent appellate review and revision of a sentence—including where a trial court has acted within its lawful discretion in imposing that sentence— through Appellate Rule 7(B). The rule permits us to revise a sentence "if, after due consideration of the trial court's decision, we find the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Gibson v. State*, 51 N.E.3d 204, 205 (Ind. 2016). The purpose of this express authority to review and revise sentences is to ensure that justice is done

in Indiana courts and to provide unity and coherence in judicial application of the laws. *Pruitt v. State*, 834 N.E.2d 90, 121 (Ind. 2005).

## Standard of Review

On appeal, the defendant bears the burden of persuading us that his sentence is inappropriate. *Gibson*, 51 N.E.3d at 215. Sentence review under Appellate Rule 7(B) is "very deferential" to the trial court. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Because a trial court's judgment receives considerable deference, our principal role is to "leaven the outliers," and not to achieve a perceived correct result. *Hamilton v. State*, 955 N.E.2d 723, 726 (Ind. 2011) (*citing Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). Accordingly, our deference to the trial court's judgment prevails "unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Whether a sentence is inappropriate ultimately depends upon "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Dilts v. State*, 80 N.E.3d 182, 188-89 (Ind. Ct. App. 2017), *trans. denied*. We may look to any factors appearing in the record for such a determination. *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct. App. 2011), *trans. denied*.

## *I. Waiver*

First, we address the State's contention that Douglas waived his challenge to the inappropriateness of his sentence because he did not proffer a specific argument that his sentence is inappropriate in light of the nature of his offenses. A Rule 7(B) argument may be waived where a defendant "invokes the rule but sets forth no reasons supporting that claim." *Connor v. State*, 58 N.E.3d 215, fn.3 (Ind. Ct. App. 2016); *see, e.g., Boyle v. State*, 868 N.E.2d 435, 437 (Ind. 2007).

A defendant's choice to focus his argument on just one of the two prongs, while perhaps inadvisable, does not result in waiver of our appellate authority to review and revise his sentence. *Shoun v. State*, 67 N.E.3d 635 (Ind. 2017) (declining to find Rule 7(B) argument waived where defendant did not dispute the "severe nature of the crime and focus[ed] his argument on his character"); *see also Connor*, 58 N.E.3d at 220 (defendant's acknowledgment of the egregiousness of his offense did not constitute waiver, but "his burden of persuading us that his sentence is inappropriate . . . may be heightened by the need to prove the nature of his character should overcome the admittedly serious nature of his offense").[1]

---

[1] In two recent memorandum decisions, however, our court has determined the 7(B) argument is waived where defendants failed to address both prongs of the rule. See *contra Waller v. State*, 18A-CR-1401, 2018 WL 5668599 at *1 (Ind. Ct. App. Nov. 1, 2018) (argument "not sufficient to invoke this court's authority to revise a sentence under Indiana Appellate Rule 7(B)" where defendant argued his sentence was inappropriate solely in light of his character); *accord Kruger v. State*, 18A-CR-1144, 2019 WL 1071580 at *5 (Ind. Ct. App. March 7, 2019) (same result, acknowledging in footnote seven the waiver disagreement), *trans, denied.*

[12] Here, Douglas made a perfunctory argument regarding the nature of his offenses and devoted the bulk of his brief to an explanation of why his character as an offender warrants revision of his sentence. Accordingly, Douglas has not waived his challenge to the inappropriateness of his sentence. However, his burden remains to persuade us that his character as an offender overcomes the egregious nature of his offenses.

[13] We observe, too, that Appellate Rule 7(B) requires us to consider both prongs in determining whether a sentence is inappropriate. *See Payton v. State*, 818 N.E.2d 493, 498 (Ind. Ct. App. 2004) ("[I]t is clear that [the defendant's] character falls within the category of the worst offenders. However, we are *also obliged* to consider the nature of the offenses." (emphasis added)), *trans. denied*. "Our courts have frequently treated the two prongs as separate inquiries to ultimately be balanced in determining whether a sentence is inappropriate." *Connor*, 58 N.E.3d at 218. Nevertheless, in balancing the two prongs, "we often exercise our review and revise power where only one of the prongs weighs heavily in favor of either affirming or revising the sentence." *Id.* at 219; *see, e.g., Eckelbarger v. State*, 51 N.E.3d 169, 170–171 (Ind. 2016) (revising defendant's sentence from thirty-two years to sixteen years upon finding the nature of his offenses did not warrant consecutive sentences, without also discussing whether his character warranted revision); *Cardwell*, 895 N.E.2d at 1226 (revising defendant's sentence on the basis of the nature of the offenses alone because the record contained inconclusive information on the nature of the defendant's character).

[14]     It is with this understanding of our authority under Appellate Rule 7(B) that we review Douglas's character as an offender and the nature of his offenses, compelling evidence portraying in a positive light either or both of which is necessary to overcome our deference to the trial court's judgment.

## II.   Character of the Offender

[15]     Douglas argues that his sentence is inappropriate in light of his character as an offender, pointing to his significant mental illness and long-term drug and alcohol abuse. In assessing a defendant's character, we engage in a broad consideration of his qualities. *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014). "The character of the offender is found in what we learn of the offender's life and conduct." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011).

[16]     At the time of his sentencing, Douglas was twenty-seven years old. Appellant's App. p. 184. At age seven, he was diagnosed with bipolar disorder, Attention Deficit Hyperactivity Disorder, and anxiety. Appellant's Conf. App. p. 157. His pre-sentence investigation report indicates that he began abusing drugs as a child and endured an adolescence without many of the familial and educational supports to which children are entitled. *Id.* at 156–58. Douglas has been treated in a mental institution nine times, and he has attempted suicide three times, most recently while incarcerated in the Lake County Jail. *Id.* at 157. As a result, proceedings in this cause were continued upon the filing of a motion for insufficient comprehension and the court's order that Douglas undergo a competency evaluation. Appellant's App. pp. 80–82. Two of three court-appointed psychiatrists found Douglas to not have sufficient comprehension to

assist counsel in his defense, and, in October 2018, the trial court ordered him committed to psychiatric confinement with the Indiana Family & Social Services Administration. *Id.* at 85. As of a status hearing on February 26, 2019, Douglas had not yet been transported from Lake County Jail to the Department of Mental Health. *Id.* at 86. Then, on April 9, 2019, the court's prior transport order was stayed upon defense counsel's motion, and Douglas's case proceeded to trial in August 2019. *Id.* at 89–91.

[17] Also relevant to our review of an offender's character is his criminal history, the significance of which varies based on the gravity, nature, and number of prior offenses in relation to the current offenses. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). Douglas has an extensive history of juvenile delinquency and adult criminal convictions. Appellant's Conf. App. pp. 150–55. These include seven juvenile adjudications; four prior misdemeanor convictions; and two prior felony convictions: Escape/Violation of Electronic Monitoring, for which Douglas was sentenced to thirty months, and Possession of a Weapon in a Penal Institution, for which he was sentenced to four years. *Id.* at 155. Douglas also admits to being a "past member" of the Black Stones Gang in Chicago. *Id.* at 157. As the trial court observed, "[a]ny previous incarceration has failed to deter you from a life of crime. You've led a drug-addicted lifestyle that possibly fuels your activity." Tr. Vol. IV, p. 211. We agree, though this is not the end of the inquiry.

### III. Nature of the Offenses

[18] In considering the nature of an offense, "the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). Douglas was sentenced to sixteen years for each Level 3 felony armed robbery offense, which is the maximum sentence deemed appropriate by the legislature; the advisory sentence is nine years, and the minimum sentence is three years.[2] *See* I.C. § 35-50-2-5(b). Generally, a trial court should "reserve maximum sentences for classes of offenses that constitute the worst of the worst." *Hamilton*, 955 N.E.2d at 727.

[19] Where a sentence exceeds the advisory sentence, we consider whether there is anything more egregious about the offense as committed by the defendant that "makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *Holloway v. State*, 950 N.E.2d 803, 807 (Ind. Ct. App. 2011). The nature of the offense is "found in the details and circumstances of the commission of the offenses and the defendant's participation." *Croy*, 953 N.E.2d at 664.

[20] Douglas committed back-to-back robberies of two businesses during which he held their cashiers at gunpoint. This terrifying experience prevented one cashier

---

[2] Because armed robbery is a crime of violence (*see* I.C.§ 35-50-1-2(a)(13)), Douglas's sentences were properly ordered to be served consecutively, for a total of thirty-two years. We note that the twenty-year total established by Indiana Code § 35-50-1-2(d)(4) for consecutive terms of imprisonment is inapplicable here, because Douglas's convictions arose from separate episodes of criminal conduct.

from returning to work for two months. We cannot say that Douglas's commission of these offenses was accompanied by particular regard for his victims. Nor were the offenses accompanied by restraint: the trial court heard evidence during sentencing that Douglas was suspected of committing a spate of armed robberies spanning the Indiana-Illinois state line. At the time of his sentencing, Douglas had not been charged with those crimes; nevertheless, the trial court's sentencing order noted that Douglas's "pattern of participating in the number of robberies is egregious." Appellant's App. p. 184. The trial court found that Douglas "engaged in prolific crime sprees which negates any remorse that the defendant expressed at sentencing," and that "as far as armed robberies are concerned, this is the worst of the worst." *Id.* Evidence of Douglas's participation in contemporaneous armed robberies not only "reflects extremely adversely on the defendant's character," as the trial court rightly observed, it also differentiates the nature of Douglas's offenses from the typical offense as accounted for by the legislature when it devised an appropriate sentencing range for Level 3 felonies. *Id.*

[21] Based on our review of the circumstances of Douglas's offenses and his character as an offender, we find that Douglas has not carried his burden of showing that his sentence is inappropriate under Appellate Rule 7(B). This conclusion comports with our tendency to "reserve our 7(B) authority for 'exceptional' cases." *Taylor v. State*, 86 N.E.3d 157, 165 (Ind. 2017). We are mindful, too, that our appellate review should "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number

of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225. The deference we owe to trial courts in sentencing persuades us that it was not inappropriate for the trial court to impose an aggregate sentence of thirty-two years.

## Conclusion

[22] For all of these reasons, we conclude that Douglas's thirty-two-year sentence is not inappropriate in light of his character and the nature of his offenses, and we affirm the trial court's sentence.

[23] Affirmed.

Riley, J., and Tavitas, J., concur.